* * * * * * * * * * *
The Full Commission has reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and arguments before the Full Commission. The appealing party has shown good grounds to reconsider the evidence. The Full Commission MODIFIES the Opinion and Award of the Deputy Commissioner and enters the following Opinion and Award.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. All parties are properly before the North Carolina Industrial Commission and the Commission has jurisdiction of the parties and subject matter.
2. All parties have been correctly designated and there is no question as to misjoinder or nonjoinder of parties.
3. The parties to this action are subject to and bound by the North Carolina Workers' Compensation Act.
4. North Carolina School Boards Trust ("NCSBT" hereinafter), now administered by the PMA Group, was the carrier on the risk at the time of plaintiff's compensable injury by accident of March 31, 2000.
5. Key Risk Insurance Company was the carrier on the risk on and after April 23, 2002.
6. Plaintiff's average weekly wage on March 31, 2000, was $345.96, which yields a compensation rate of $230.65.
7. Following receipt of the transcripts of the depositions, plaintiff's medical records were stipulated into the evidence.
8. The issues before the Commission are whether plaintiff sustained a compensable injury by accident on April 23, 2002, and, if so, are plaintiff's back condition and resulting surgery causally related to the compensable injury by accident on March 31, 2000, or to the alleged injury by accident on April 23, 2002; to what, if any, benefits is plaintiff entitled; and whether plaintiff is barred by N.C. Gen. Stat. § 97-47 from pursuing benefits for the injury on April 31, 2000.
 * * * * * * * * * * *
Based upon all of the competent and credible evidence of record, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff, who was 49 years of age at the time of the Deputy Commissioner's hearing, began working for defendant-employer Asheville City Schools as a custodian in 1997.
2. On March 31, 2000, plaintiff sustained a compensable low back injury arising out of and in the course of his employment with defendant-employer as a result of lifting heavy boxes. Defendant-employer and its workers' compensation carrier, defendant NCSBT, accepted the compensability of plaintiff's claim and pursuant to an I.C. Form 60, began paying plaintiff temporary total disability compensation benefits based upon an average weekly wage of $345.96. Plaintiff began receiving said benefits on April 3, 2000.
3. Plaintiff presented to the Sisters of Mercy Urgent Care on April 6, 2000, reporting complaints of low back pain radiating to his right leg.
4. Following his low back injury of March 2000, plaintiff underwent a lumbar MRI on April 28, 2000, the results of which showed a moderately large, right-sided disc herniation at L5-S1.
5. Plaintiff presented to Dr. Richard Weiss, neurosurgeon, on May 9, 2000. At that time, physical examination by Dr. Weiss revealed positive straight leg raising and sensory deficits in a right S1 distribution. Interpreting plaintiff's MRI, Dr. Weiss further noted that plaintiff's disc herniation at L5-S1 extended well below the interspace and compressed the exiting right S1 nerve root.
6. Dr. Weiss advised plaintiff of his treatment options, which consisted of possible surgery or conservative care. Because plaintiff's condition was improving and he wanted to defer surgery if possible, he and Dr. Weiss decided on a course of conservative treatment, which meant that plaintiff's activities were restricted. As of May 31, 2000, plaintiff was doing extremely well and was virtually asymptomatic. He returned to his custodial job with defendant-employer in June 2000.
7. Defendant NCSBT filed a Form 28B with the Industrial Commission on May 30, 2001, showing plaintiff received temporary total disability compensation from April 3, 2000 through June 4, 2000, and that the last medical compensation was paid on July 3, 2000.
8. Subsequent to returning to work for defendant-employer in June 2000, plaintiff continued to have low back pain for which he took pain medications and occasionally missed time from work. Plaintiff continued to perform his regular job from June 1, 2000, until his second injury on April 23, 2002.
9. In January 2002 plaintiff experienced a flare-up of his low back pain and radiating right leg pain, which gradually became more severe and did not improve. As plaintiff reported to Dr. Weiss during a later visit, his flare-up of January 2002 came upon without any apparent precipitating cause.
10. On April 23, 2002, while performing his custodial work for defendant-employer plaintiff felt a "snap" in his low back as he lifted a bag of garbage into a dumpster. This incident did not cause the immediate onset of any additional low back pain. Shortly thereafter, however, while walking up a flight of stairs, plaintiff `s right leg gave way, causing him to fall. Plaintiff experienced increased low back and radiating right leg pain.
11. Plaintiff sought treatment at the urgent care center on April 23, 2002. Plaintiff's pain in his right leg was much worse following the April 23, 2002 incident, including a pain that ran all the way down his right leg causing him to be unable to walk without dragging his right leg. Plaintiff did not experience pain running down the entire length of the right leg following the 2000 injury.
12. The urgent care center referred plaintiff for an MRI and a return visit with Dr. Weiss. Plaintiff underwent a lumbar MRI on June 19, 2002, the results of which showed a large disc herniation at L5-S1. Plaintiff returned to Dr. Weiss on June 26, 2002, with recurrent pain very similar to the pain he had in 2000, which radiated from his right hip down his right leg.
13. Due to plaintiff's persistent pain, Dr. Weiss performed a right L5-S1 micro-lumbar diskectomy on July 30, 2002. In surgery, Dr. Weiss found that the disc material was scarred or adherent to the nerve root, which meant that the herniated disc had been present since 2000. Dr. Weiss explained:
 [H]e unequivocally had a herniated disk on the right at L5-S1 in 2000. Now, his symptoms improved and, in fact, went away completely. . . . I think it's very possible that his disk herniation resolved somewhat. A disk herniation can actually disappear or it can get smaller over a period of time, and I think it is certainly very probable or possible that his disk herniation got smaller to the point where it was not causing enough pressure on the nerve root to the point where he became asymptomatic, but the disk hernation never went away completely. And then when his problem reoccurred, I'm assuming that the same disk probably bulged out again more and, subsequently we did surgery. And the scarring that I saw could have been a result of the previous disk herniation. It doesn't mean that he had had the large disk herniation ever since the year 2000.
14. Dr. Weiss further stated in his notes and at his deposition that plaintiff's recurrent disk problem related back to the original injury in 2000. However, he also stated to a reasonable degree of medical certainty that the April 23, 2002, injury by accident aggravated plaintiff's previous injury and that the aggravation led to the surgery which he performed.
15. Plaintiff last saw Dr. Weiss on September 30, 2002, at which time plaintiff was released to return to all normal activities, including work. Dr. Weiss subsequently retired and plaintiff's treatment was transferred to several of Dr. Weiss' partners. Plaintiff continued after the surgery to have chronic pain and was treated by several pain management specialists.
16. Pain specialist Dr. Jerry A. Kotulla began treating plaintiff on December 1, 2003. An MRI done in May 2003 showed scarring of the S1 nerve, as well as stenosis at L3-4 and L4-5. Dr. Kotulla stated that the scarring in the epidural space and on the S1 nerve root likely resulted from the July 2002 surgery. Dr. Kotulla also stated to a reasonable degree of medical certainty that his treatment of plaintiff was directly related to the April 23, 2002 injury by accident.
17. Dr. Kotulla last treated plaintiff on August 10, 2004. Dr. Kotulla recommended further treatment, such as radio frequency procedure and muscle stimulator unit, but plaintiff was unable financially to afford this treatment. Plaintiff was released to the care of his family doctor, Dr. David Clements, but he continued to have chronic low back pain. Dr. Kotulla placed no work restrictions on plaintiff when he released him on August 10, 2004.
18. Plaintiff testified at the Deputy Commissioner's hearing that he saw Dr. Clements once a month for follow up, that he attended physical therapy twice a week, and continued to experience low back and right leg pain, as well as balance problems for which he had to walk with a cane.
19. On April 23, 2002, plaintiff sustained a second injury by accident arising out of and in the course of his employment with defendant-employer. The Commission finds by the greater weight of the medical evidence that plaintiff's back condition and resulting surgery are causally related to the April 23, 2002 incident, which constituted an aggravation of the injuries sustained from the previous March 31, 2000 injury by accident.
20. As the result of the compensable injury by accident on April 23, 2002, plaintiff was disabled from any employment beginning April 23, 2002 and continuing until plaintiff's release to return to work with no restrictions by Dr. Weiss on September 30, 2002. Thereafter, plaintiff was capable of some work. Although the record was reopened for the submission of additional evidence, including medical evidence concerning "the nature and extent of plaintiff's current disability, if any," plaintiff presented no evidence that he was taken out of work by any physician, that he made an unsuccessful job search, or that seeking employment would be futile due to pre-existing conditions.
21. Plaintiff's average weekly wage as of April 23, 2002, was $376.98, which yields a compensation rate of $251.33 per week.
22. Plaintiff became eligible for short-term disability compensation through defendant-employer's retirement system and began receiving $818.02 per month on June 30, 2002 for a period of 12 months.
23. Plaintiff became eligible for long-term disability benefits through defendant-employer's retirement system and began receiving long-term disability benefits in the amount of $1,063.47 per month beginning June 30, 2003 and continuing. While plaintiff contributed six percent (6%) of his salary to the North Carolina Employees' Retirement System, no part of plaintiff's contribution thereto is allocated for the short-term or long-term disability plans. Both are solely funded by the employer.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident arising out of and in the course of his employment with defendant-employer on March 31, 2000, resulting in an injury to his low back. N.C. Gen. Stat. § 97-2(6).
2. The aggravation of a pre-existing condition that results in the loss of wage earning capacity is a compensable injury. Smithv. Champion Int'l, 134 N.C. App. 180, 517 S.E.2d 164 (1999);Hoyle v. Carolina Associated Mills, 122 N.C. App. 462,470 S.E.2d 357 (1996). On April 23, 2002, plaintiff sustained a second compensable injury by accident arising out of and in the course of his employment with defendant-employer, which aggravated the previous injury to plaintiff's low back. N.C. Gen. Stat. § 97-2(6).
3. Because plaintiff's claim was denied, plaintiff has the burden of proving disability, defined as a loss of wage earning capacity. Russell v. Lowes Product Distribution,108 N.C. App. 762, 425 S.E.2d 454 (1993). Sims v. Charmes/Arby's Roast Beef,142 N.C. App. 154, 542 S.E.2d 277 (2001). In order to meet the burden of proving disability, plaintiff must prove that he was incapable of earning pre-injury wages in either the same or in any other employment and that the incapacity to earn pre-injury wages was caused by plaintiff's injury. Hilliard v. Apex CabinetCo., 305 N.C. 593, 290 S.E.2d 682 (1982). An employee may meet the initial burden of proof by producing one of the following: (1) medical evidence that he is physically or mentally, as a result of the work-related injury, incapable of work in any employment; (2) evidence that he is capable of some work, but that he has, after a reasonable effort, been unsuccessful in his efforts to obtain employment; (3) evidence that he is capable of some work, but that it would be futile because of preexisting conditions, such as age, inexperience, or lack of education, to seek employment; or (4) evidence that he has obtained other employment at wages less than his pre-injury wages. Demery v.Perdue Farms, Inc., 143 N.C. App. 259, 545 S.E.2d 485 (2001);Russell v. Lowes Product Distribution, supra. When a plaintiff meets his burden of showing disability, the burden then shifts to defendants to produce evidence that suitable jobs are available for the employee and that the employee is capable of obtaining a suitable job, taking into account both physical and vocational limitations. Demery v. Perdue Farms, Inc., supra.
4. In this case, the greater weight of the medical evidence showed that as a result of his compensable injury by accident of April 23, 2002, plaintiff was disabled from any employment beginning April 23, 2002 until September 30, 2002 when Dr. Weiss released plaintiff to return to work with no restrictions. Thereafter, no doctor took plaintiff out of work and plaintiff was capable of some work. Plaintiff presented no evidence that he had made reasonable but unsuccessful efforts to find work, or that it would be futile for him to seek employment because of other factors. N.C. Gen. Stat. § 97-29; Russell v. Lowes ProductDistribution, supra.
5. As the result of his compensable injury by accident on April 23, 2002, plaintiff was disabled from any employment and entitled to receive temporary total disability compensation at the rate of $251.33 per week from April 23, 2002 until September 30, 2002. N.C. Gen. Stat. § 97-29; Russell v. Lowes Product Distribution,supra.
6. Defendant-employer and Key Risk are liable to plaintiff for all compensation and medical compensation benefits awarded below.
7. The issue of plaintiff's permanent functional impairment, if any, to his back as a result of the compensable injury by accident on April 23, 2002, is reserved for future determination.
 * * * * * * * * * * *
Based upon the foregoing stipulations, findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Defendant-employer and Key Risk shall pay temporary total disability compensation benefits to plaintiff in the amount of $251.33 per week beginning April 23, 2002 and continuing until September 30, 2002, subject to attorney's fees and deductions provided below. This amount has accrued and shall be paid in a lump sum.
2. Defendant-employer and Key Risk are entitled to a deduction for all short and long term disability benefits paid to plaintiff, which shall be offset against all temporary total disability compensation awarded in Paragraph 1.
3. An attorney's fee of 25% of all compensation owed to plaintiff, after the deduction set out in Paragraph 2 above, is hereby approved for plaintiff's counsel.
4. Defendant-employer and Key Risk shall pay for all medical compensation for plaintiff's compensable injuries for so long as said treatment effects a cure, gives relief or tends to lessen plaintiff's period of disability.
5. The issue of any permanent functional disability to plaintiff's back is reserved for future determination.
6. Defendant North Carolina School Boards Trust is not liable for payment of any portion of this award.
7. Defendant-employer and Key Risk shall pay the costs.
This 27th day of October, 2006.
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
 S/_____________ PAMELA T. YOUNG COMMISSIONER